UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA


| | |
|---|---|
| JACQUELINE REECE ) | |
| Plaintiff, ) | |
| ) | No. 1:05-CV-209 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| ) | |
| SHERIFF MIKE NEAL AND THE RHEA COUNTY ) | |
| SHERIFF'S DEPARTMENT ) | |
| Defendants. ) | |

## MEMORANDUM

Before the Court is Defendants Sheriff Mike Neal and the Rhea County Sheriff's

Department's[1] ("Defendants") Motion for Summary Judgment (Court File No. 22). The Plaintiff

Jacqueline Reece ("Reece") filed a response to Defendants' motion (Court File No. 24) and

Defendants filed a reply (Court File No. 25). For the following reasons, the Court will **GRANT**

Defendants' motion.


## I.    RELEVANT FACTUAL AND  PROCEDURAL BACKGROUND

Reece began her employment with the Rhea County Sheriff's Department in September 2003

(Court File No. 1). Reece was employed on a full time basis as a Corrections Officer in the Rhea

County Jail for one and a half years before she was terminated on January 14, 2005 (*id.*). As part

---

[1]Although counsel for the Rhea County Sheriff's Department did not raise the issue, the
Court notes the Sheriff's Department it is not a suable entity. The proper parties would be the
individual actors or the County.

of her job duties, Reece was responsible for monitoring prisoners in the Rhea County Jail (*id*.). Reece began experiencing panic attacks in December 2004 (Court File No. 24, Ex. 2). Reece believes a co-worker Eric Ewton took her to the hospital in late December 2004 for treatment of a panic attack episode (*id*). Reece worked her last shift at the jail on January 2, 2005 (*id.*). On January 3, 2005 Reece went to the emergency room and was advised she should admit herself to the Valley Hospital for in-patient treatment of depression (*id.*). Reece admitted herself on January 4, 2005 (*id.*). Reece's husband telephoned the Rhea County Sheriff's Department and informed an unidentified employee Reece would be in the hospital for seven to ten days (*id.*). Reece was prescribed Lexapro, Ativan, and Trazadone for her depression and panic attacks (*id.*). Reece was released from Valley Hospital on January 10, 2005 with instructions to remain home from work for two weeks (*id.*).

While Reece was hospitalized, Reece's supervisor Melba Huffman called Reece's home to inquire about her health (*id.*). Additionally, Reece's sister-in-law spoke with Talyna Welch at the Rhea County Sheriff's Department about Reece's condition (*id.*). On January 11, 2005, Reece went to the Sheriff's Department and gave a note she received from her doctors to Melba Huffman (*id.*). Reece inquired where to file Family Medical Leave Act ("FMLA") papers and was directed by personnel at the Sheriff's Department that the appropriate place to file the papers was the County Finance Department (*id.*). Reece filed the appropriate FMLA papers at the Finance Office on January 11, 2005 (*id.*).

On January 14, 2005, Reece went to the Sheriff's Department to pick up her paycheck (*id.*). When she arrived, she was informed by Huffman she was fired for taking inmate medication and sleeping on the job (*id.*). Defendants contend Reece was also fired for selling cigarettes to inmates

(Court File No. 23, Ex. 5). Reece denies she committed the infractions (Court File No. 24, Ex. 2). Reece received her separation notice on January 18, 2005 (*id*.). Reece admits taking inmate medication, sleeping on the job and selling cigarettes to inmates are terminable offenses although she contends she did not receive any warnings or reprimands prior to her termination (*id*.). Sheriff Neal claims he became aware of Reece's alleged misconduct before January 11, 2005 and decided to fire Reece during the first week of January 2005 (*id*.). Defendants contend an investigation into Reece's alleged misconduct occurred before January 11, 2005 and included interviewing prisoners and other Rhea County Sheriff's Department personnel (Court File No. 23, Ex. 3). Reece filed a request for an administrative review of her termination by the Rhea County Civil Service Board on February 9, 2005 and acknowledged her appeal was not timely (Court File No. 24, Ex. 4). An appeal to the Civil Service Board must be submitted within seven days of receiving the order of discipline (Court File No. 24, Ex. 5).

## II.    APPLICABLE LAW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses or determine the truth of any matter in dispute.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    ANALYSIS

The Court will not address Reece's claim under the Tennessee "Whistleblower Act," TENN. CODE ANN. § 50-1-304, because Reece conceded this claim is not supported by law. Furthermore, as Reece has admitted not exhausting the necessary administrative remedies, the claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the claim for retaliation under the Americans with Disabilities Act will not be addressed. Moreover, Reece's attempt to obtain damages under 42 U.S.C. § 1981(a) will not be addressed because the prerequisite Americans with

Disabilities claim is without merit. The Court will discuss the remainder of Reece's claims individually.

### A. Reece's Claim Under the FMLA

Under the FMLA, 29 U.S.C. §§ 2601 *et seq.*, an employee is entitled to return to her position after up to twelve weeks of leave from work due to a "serious health condition" that rendered the employee unable to perform the functions of her position. 29 U.S.C. §§ 2614(a), 2612(a). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id*. at § 2611(11). The FMLA prohibits employers from restraining, denying or interfering with the exercise or attempt to exercise FMLA rights. 29 U.S.C. § 2615(a). "An employer who interferes with an employee's rights under the FMLA may be held liable in a civil suit." *Plant v. Morton Int'l., Inc.*, 212 F.3d 929, 934 (6th Cir. 2000); *see* 29 U.S.C. § 2617. Terminating an employee who is currently taking FMLA leave would effectively deny the employee her statutory right to restoration to the same or an equivalent position when she is able to return to work after taking FMLA leave. *See* 29 U.S.C. § 2614(a)(1). However, the FMLA is not a strict liability statute and a dismissal alone in temporal proximity to a FMLA application does not trigger a FMLA violation. *Edgar v. JAC Prods*., 443 F.3d 501, 507 (6th Cir. 2006).

> "An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave. *Id*.

*Arban v. West Publ. Corp.,* 345 F.3d 390, 401 (6th Cir. 2003).  There are two distinct theories of recovery under the FMLA.

> The "entitlement" or "interference" theory arises from § 2615(a)(1), which states that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," and from § 2614(a)(1), which provides that "any eligible employee who takes leave . . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position." The "retaliation" or "discrimination" theory arises from § 2615(a)(2), which provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

*Arban*, 345 F.3d at 400-01.

For Reece to prevail on the entitlement claim she must prove that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.  *Edgar*, 443 F.3d at 507. The intent of the employer is not a factor to be considered under the entitlement theory.  *Id*.  If the dismissal would have occurred regardless of the employee asking for FMLA leave, there is no violation.  *Id*. (citing *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 979 8th Cir. 2005) ("As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights."). The employee must show a violation of the FMLA caused her harm.

Defendants put forth evidence showing Reece suffered no harm as a result of her termination because she was going to be fired regardless of FMLA activity.  Reece may not rest on her pleadings

and must put forth evidence Defendants denied her an FMLA benefit to which she was entitled.

Melba Huffman, Reece's supervisor, learned of Reece's alleged misconduct before Reece filed her

FMLA paperwork on January 11, 2005. Furthermore, Huffman investigated the misconduct, spoke

to employees and inmates regarding the misconduct and alerted Sheriff Neal before January 11,

2005. The decision to fire Reece was made before January 11, 2005. Furthermore, the decision to

fire Reece was for conduct that occurred before Reece was hospitalized. Reece's alleged conduct

was a terminable offense and therefore she was no longer entitled to her position. Reece does not

put forth any evidence she was entitled to be reinstated. Reece merely assumes because her previous

performance reviews were positive, her firing must relate to the FMLA filing. However, as she

admits, all three actions she is accused of are terminable offenses meaning her prior reviews are

irrelevant. Reece cannot stand on allegations in her complaint alone to avoid summary judgment.

Because undisputed facts show the decision to fire Reece was based on her employer's belief she

committed terminable offenses, she was not entitled to return to her job and thus she cannot recover

on an entitlement theory under the FMLA.

The second theory under the FMLA is the retaliation theory where the employer's motive

is integral to the analysis. "The employer's motive is relevant because retaliation claims impose

liability on employers that act against employees specifically because those employees invoked their

FMLA rights." *Edgar*, 443 F.3d at 508. The Court must apply the burden-shifting analysis

articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff establishes a

prima facie case by proving (1) she availed herself of a protected right under the FMLA by notifying

her employer of her intent to take leave, (2) she suffered an adverse employment action and (3) that

there was a causal connection between the exercise of her right under the FMLA and the adverse

employment action. *Edgar*, 443 F.3d at 508. The only element in contention is the third element.

Summary judgment is appropriate in the unlawful retaliation context of an employment discrimination suit when the plaintiff fails to produce any evidence, direct or circumstantial, to rebut the denials of the decision-makers. *Mulhall v. Aschcroft*, 287 F.3d 543, 552 (6th Cir. 2002). While there is a factual dispute about whether any employee of the Rhea County Sheriff's Department was aware Reece filed a FMLA application for leave, there is no dispute of material fact that no decision-maker knew of the FMLA filing at the time the decision to fire Reece was made or when Reece was told she was fired.

There is evidence Huffman did not know about Reece's FMLA filing when she spoke with Sheriff Neal about firing Reece or even when the termination occurred (Court File No. 25, Ex. 3). Furthermore, the decision-maker, Sheriff Neal, stated in an affidavit he was unaware of her FMLA filing when he made the decision to terminate Reece and when Reece was informed of her termination (Court File No 23-5).

The only evidence Reece relies on is the time proximity between her taking medical leave and her termination. When a plaintiff relies on indirect evidence in an FMLA case the Court must employ the *McDonnell Douglas* burden-shifting framework. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). First, Reece must prove a prima facie case of discrimination. The burden then shifts to Defendants to articulate a legitimate nondiscriminatory reason for Reece's termination. If Defendants satisfy their burden, Reece must show the articulated reason is a pretext. If Reece did establish a prima facie case, the burden would shift to Defendants.

Reece establishes a prima facie case of discrimination because she was an eligible employee working for an eligible employer, she was entitled to leave and gave notice and intention to take

leave, and she was not reinstated to her position after her leave was finished. Therefore, Defendants must articulate a legitimate nondiscriminatory reason for not reinstating Reece. Defendants put forth evidence it was their belief Reece engaged in the terminable offenses of taking inmate medication, selling cigarettes to inmates and sleeping on the job. "[U]nder Sixth Circuit case law, the company is required only to have a good faith belief, formulated through a reasonable reliance on particularized facts, for its employment decision." *Bowie v. Advanced Ceramics Corp.*, 72 F. App'x 258, 263 (6th Cir. 2003). Therefore, if the decision-makers had a good faith belief Reece committed terminable offenses, whether or not Reece actually committed the offenses is immaterial.

Reece cannot rely on the temporal proximity alone to show the reason given by Defendants was a pretext. *Id.* at 317. Reece has not put forth any evidence her termination did not result from a belief on the part of her supervisors that she committed the terminable offenses. Defendants not only rely on the affidavits of Neal and Huffman, but also of Robin Gentry, an inmate who discussed seeing Reece sell cigarettes and take the medication of another inmate. Gentry witnessed the activity while Reece was still working at the jail and discussed his observations with Huffman prior to Reece's FMLA filing. Reece's denials of the underlying facts resulting in her termination do not address Defendants' argument that the termination was a result of the good faith belief she committed terminable offenses. Reece cannot show Defendants' stated reasons are a mere pretext. Therefore, summary judgment is appropriate on Reece's FMLA retaliation claim.

## B. Reece's Claim Under the Tennessee Human Rights Act

The Tennessee Human Rights Act ("the THRA") states the Tennessee General Assembly's intention in enacting the statute is to "[s]afeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment

and public accommodations." TENN. CODE ANN. § 4-21-101(a)(3). Defendants argue because Reece does not contend she has endured discrimination because of her race, color, religion, sex, age or national origin, her claim fails. Reece contends discrimination based on a physical handicap is a valid claim under the THRA. However, the Tennessee Court of Appeals held "[t]he employment-related part of the THRA does not expressly apply to claims of discrimination based upon a disability. Instead, an employee is protected from an adverse employment decision based upon a disability under the Tennessee Handicap Act ("THA"), T.C.A. § 8-50-103 (1993)." *Pelberg v. Brencor Asset Mgmt.*, 63 S.W. 3d 390, 394 (Tenn. Ct. App. 2001). Reece does not mention the Tennessee Handicap Act or TENN. CODE ANN. § 8-50-103 in her complaint or in her Response Memorandum.

Reece argues *Tuck v. HCA Health Servs. of Tennessee*, Inc., 842 F. Supp. 988 (M.D. Tenn. 1992), holds an action for employment discrimination based on disability is actionable under the THRA. However, in Tuck, the plaintiff also sued under the Tennessee Handicap Act. *Tuck v. HCA Health Servs. of Tennessee, Inc.*, 7 F.3d 465, 457 (1993). Reece also points to *Richardson v. CVS Corp.*, 207 F. Supp. 2d 733 (E.D. Tenn. 2001), for the proposition that an employee terminated on the basis of a perceived handicap can bring a cause of action under the THRA. However in *Richardson*, Judge Edgar stated "Richardson claims that she was terminated because of her race, sex and age in violation of the Tennessee Human Rights Act." *Id.* At 744. The THRA claim in *Richardson* was valid because the plaintiff claimed the termination was based on race, sex and age discrimination. Because Reece does not claim discrimination on the basis of her race, color, religion, sex, age or national origin, summary judgment on her THRA claim is appropriate.

**C. Procedural Due Process Claim Under 42 U.S.C. § 1983**

Reece argues Defendants violated 42 U.S.C. § 1983 by depriving her of her property interest

in employment without due process under the Fourteenth Amendment or Fifth Amendment to the

United States Constitution. "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must

identify a right secured by the United States Constitution and the deprivation of that right by a

person acting under color of law." *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (citation

omitted). Reece argues various employee manuals supplemented her at-will employment contract

creating a property right in her employment. She argues she could not be deprived of this property

right without procedural due process protections and that Defendants unlawfully denied her these

protections. Reece claims she has lost property interests including retirement benefits, medical

insurance benefits, vacation benefits and sick leave as a result of her wrongful termination without

due process. Reece argues she had a property interest in her employment and was deprived of this

property interest without due process of law. Reece cites *Loudermill v. Cleveland Board of

Education*, 470 U.S. 532 (1985), in her complaint for the proposition that a lack of minimal due

process hearings concerning the charges prior to her termination resulted in a denial of her

constitutionally protected rights.

> "Property interests are not created by the Constitution, 'they are created and their
> dimensions are defined by existing rules or understandings that stem from an
> independent source such as state law . . . .'" *Cleveland Bd. of Educ. v. Loudermill*,
> 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985) (quoting *Board of
> Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)). In a
> procedural due process claim, the deprivation of property by state action is not itself
> unconstitutional; "what is unconstitutional is the deprivation of such an interest
> without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125, 108 L. Ed. 2d
> 100, 110 S. Ct. 975 (1990) (emphasis in original). Regardless of when the
> deprivation occurs, the constitutional violation "is not complete unless and until the
> State fails to provide due process." *Id*. at 126 (emphasis added). Therefore, in order
> to determine whether there was a due process violation, it is necessary, first, to ask
> whether the plaintiff has demonstrated that she was deprived of a property right; if
> she was so deprived, the question is whether the process provided was

constitutionally adequate. The type of process due is a question of federal law. *Loudermill*, 470 U.S. at 540-41.

*Christophel v. Kukulinsky*, 61 F.3d 479, 485-86 (6th Cir. 1995). Therefore, this Court must first examine if Reece demonstrated she was deprived of a property right and if so, whether the process provided was constitutionally adequate. In *Loudermill,* the Court found the plaintiff did have a property right in employment. However, under an Ohio statute, a public employee can only be terminated for malfeasance, misfeasance or nonfeasance. *Loudermill*, at 538.

In Tennessee, it is well established "a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause." *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 625 (Tenn. Ct. App. 1985); *Whittaker v. Care-More*, *Inc.*, 621 S.W.2d 395, 396 (Tenn. Ct. App. 1981). Under an employment-at-will contract, either the employer or the employee can terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without either party being guilty of a legal wrong. *Stein v. Davidson Hotels Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). "Because Tennessee continues to adhere to the foregoing 'employee-at-will' rule, a presumption arises in this state that an employee is an employee at will." *Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d 690, 691-92 (Tenn. Ct. App. 1997) (citing *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990)).

Reece argues the Rhea County personnel policy manual, the Rhea County Sheriff's Department patrol division policy and procedure manual and the Civil Service Manual created a property right for her. For an employee handbook or regulations to constitute a contract, however, "the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions." *Id*. (citing *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. Ct. App. 1989). "Unless an employee handbook contains such guarantees or binding commitments, the handbook

will not constitute an employment contract." *Id.* at 692 (citing *Whittaker*, 621 S.W.2d at 397). "[I]n order for an employee handbook to be considered part of an employment contract, 'the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material . . . .'" *Id.* (citing *Claiborne v. Frito-Lay, Inc.*, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989)). Furthermore, if an employer reserves the right to unilaterally modify the provisions of its employee handbook, the right generally precludes the handbook from being considered part of the parties' employment contract. *Id.* at 693-94.

The Court has located several cases where Tennessee courts have concluded the language of an employee handbook was binding on an employer. *See Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 688, (Tenn. Ct. App. 1999) (employee handbook a binding contract where it contained specific language showing the employer's intent to be bound); *Hooks v. Gibson*, 842 S.W.2d 625 (Tenn. Ct. App. 1992) (employee handbook became part of employment contract where handbook was promulgated pursuant to an agreement between employer and the state and the employees were third-party beneficiaries of the agreement); *Williams v. Maremont Corp.*, 776 S.W.2d 78 (Tenn. Ct. App. 1988) ("recall" provisions of the handbook were binding on the employer); and *Hamby v. Genesco, Inc.* 627 S.W.2d 373 (Tenn. Ct. App. 1981) (same as *Reed*).

The decisions in *Reed*, *Williams* and *Hamby* illustrate the specificity required for an employer to be bound by a handbook's provisions. In *Reed*, the employee handbook contained clauses such as "Alamo and I agree to my employment with the company, all on the terms and conditions set forth in this FamPact document . . . . 'FamPact' means Family Member Pact. . . . Alamo has written this FamPact, and promises and agrees to . . . abide by all it terms and conditions. . . . [This document] is our entire agreement of employment. Alamo's employing me under the

terms and conditions of this FamPact, and my working under its terms and conditions, support this agreement." *Reed*, 4 S.W.3d, at 687 (emphasis added). The *Hamby* court determined the employee handbook to be a binding contract when the handbook contained the statement that "[s]o long as these [employment relationships] continue[], these <u>shall</u> be the <u>Guaranteed</u> Polices, Practices and Procedures of [the employer]." *Hamby*, 627 S.W.2d at 376 (emphasis added). The focus of the *Williams* court was on whether one specific provision in a handbook was binding, the provision on recalling employees. The court determined the employer was bound by that provision as it was written in mandatory language and stated "employees <u>will</u> be recalled in the order of seniority." *Williams*, 776 S.W.2d at 80 (emphasis added).

Unlike *Reed,* there is no specific language indicating an intention to make the Rhea County personnel policy manual, the Civil Service Manual or the Rhea County Sheriff's Department patrol division policy and procedure manual part of the contract. The personnel policy manual specifically states:

> No policy, benefit, or procedure contained herein creates an employment contract for any period of time. All employees will be considered as employees-at-will. Employees may be terminated for failure to satisfactory perform their duties or simply at the will of the Department Head, but they shall not be terminated for a discriminatory or illegal purpose.

(Court File No 23, Ex. 5). No where in the policy manual did the County indicate a desire to grant a property interest in employment to employees of the Sheriff's Department. Furthermore, the manual allows the County to change the manual unilaterally at any time. Reece also argues the Civil Service manual grants her a property right in her employment. However, the Civil Service Manual states an employee may be terminated for "unsatisfactory performance of duties <u>or other causes</u>" (Court File No. 24, Ex. 5)(emphasis added). Reece did not receive a property right under this

manual as it states any employee could be fired for any reason.

Reece also argues the patrol division policy and procedure handbook was part of her employment contract. Reece points to a procedure in the patrol handbook that sets up a committee to review citizen complaints. Reece argues this creates a property interest and a hearing is required before she can be terminated. However, the citizen complaint review committee procedure is not relevant to Reece's employment contract and is not applicable to any property interest Reece may or may not have in her employment. The citizen review committee is designed to look at any infraction "having the slightest chance of jeopardizing the goals and image of this department." The committee is designed to promote community relations and cannot be construed as giving Reece a property right in her employment in the face of explicit statements to the contrary. There does not appear to be the "specific language showing the employer's intent to be bound by the handbook provisions" required under Tennessee law. *Rose*, 953 S.W.2d at 692. The Court, thus, concludes there was not a binding contract and Reece did not have a property interest in her continued employment. Accordingly, no hearing was required when Reece was terminated and no constitutional violation was committed by Defendants. Even if Reece was entitled to a hearing, she acknowledges she filed her application for a hearing two weeks after the deadline. Because Reece cannot point to a statutory or constitutional right she was deprived of by Defendants, summary judgment is appropriate.

**D. Discriminatory Practices in Violation of TENN. CODE ANN. § 4-21-301**

Recovery under TENN. CODE ANN. § 4-21-301 is authorized when a plaintiff proves agents of the defendant discriminated against the plaintiff on the basis of the plaintiff's opposition to practices made illegal in Chapter 21. TENN. CODE ANN. § 4-21-301 states:

It is a discriminatory practice for a person or for two (2) or more persons to:

> (1) Retaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter.

TENN. CODE ANN. § 4-21-301. As previously stated, Chapter 21 of TENN. CODE ANN. Title 4 makes it illegal to discriminate on the basis of race, creed, color, sex, age or national origin. Reece's claim relates to discrimination based on disability and does not allege discrimination based on a protected class under the statute. Furthermore, a FMLA filing is not a charge, complaint, investigation, proceeding or hearing under this Chapter 21 of the TENN. CODE ANN and therefore any discrimination or retaliation would not be actionable under this section. Because Reece does not allege discrimination based on a protected class under the statute, summary judgment is appropriate to Reece's claims under TENN. CODE ANN. § 4-21-301.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion for Summary Judgment (Court File No. 22) and will direct the Clerk to **CLOSE** this case.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**